T.C. Memo. 2006-235

UNITED STATES TAX COURT

JORGE O. AND CLELIA E. SVOBODA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13195-04.                    Filed November 2, 2006.

Jorge O. and Clelia E. Svoboda, pro sese.

<u>Karen Nicholson Sommers</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined an income tax deficiency
and an accuracy-related penalty under section 6662(a)[1] with

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986 as in effect for the taxable
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

respect to petitioners' 2002 taxable year.  After concessions,[2] the issues for decision are:  (1) Whether petitioner Jorge O. Svoboda received compensation income of $73,374 from his employer Fluor Corporation (Fluor) upon his exercise of stock options, and sale of the acquired stock, during the taxable year; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed the petition, petitioners Jorge O. Svoboda (petitioner) and Clelia E. Svoboda (Mrs. Svoboda) resided in San Clemente, California.

Petitioner was born in Chile in 1941 and emigrated to the United States more than 40 years ago.  After moving to the United States, petitioner earned a master's degree in business

---

[2] Petitioners have conceded that they are not entitled to any deduction for contributions to an individual retirement account and that they failed to report taxable dividends of $6.00.  Respondent has conceded that petitioners did not have unreported income with respect to a State income tax refund. Petitioners have also conceded that, in the event respondent's determinations in the notice of deficiency are sustained (except with respect to the State income tax refund), petitioners are liable for an increased deficiency and increased addition to tax when their liability for the alternative minimum tax is taken into account.

administration.  Petitioner was employed by Fluor as an electrical engineer and manager from September 1966 until February 2002.  He remained a consultant to Fluor after his retirement until 2004.[3]  Petitioner has also taught applied economics.

Fluor granted stock options to petitioner at various times during 1994 through 1998 pursuant to its "Executive Incentive Performance Plan".  On two occasions in 2002, petitioner acted through a brokerage firm to exercise certain of his stock options and immediately sell the acquired shares at the market price.  Petitioner accomplished these transactions through a process known as the Cashless Exercise Program (CEP) at the brokerage firm Morgan Stanley Dean Witter & Co. (Morgan Stanley).  The CEP was designed to allow participants to obtain the value of their stock options without having to advance the purchase price for the stock upon exercise of the option.  Under the CEP, petitioner would direct Morgan Stanley to exercise specified stock options of his and immediately sell the acquired stock at the prevailing market price.  Petitioner would then receive the proceeds of the sale less the stock's acquisition cost (at the option price), withholding taxes, and brokerage commissions.

_____

[3] The record does not disclose whether petitioner performed these consulting services as an employee of Fluor or as an independent contractor.

The first stock option transaction took place on February 25, 2002. Petitioner directed Morgan Stanley to exercise options and sell the acquired stock for options that had been granted to him on December 6, 1994 (939 shares), December 9, 1997 (1,078 shares), and December 8, 1998 (2,346 shares). Fluor provided to petitioner an accounting of the February 25, 2002, transaction entitled "Computation Worksheet for Non-Qualified Stock Option Exercise for Shares". The worksheet recorded that the option exercise resulted in the acquisition of the aforementioned 4,363 shares at a cost of $102,968.11 and their sale at a $165,367.70 fair market value on the exercise date. The difference, $62,399.59, was recorded by Fluor on the worksheet as the "wage element" of the transaction. Fluor withheld amounts for Federal and State income and employment taxes from petitioner's $62,399.59 proceeds.

The second stock option transaction took place on July 10, 2002. Petitioner directed Morgan Stanley to exercise options and sell the acquired stock for options that had been granted to him on September 11, 1995 (1,078 shares) and December 8, 1998 (783 shares). Fluor provided to petitioner an accounting of the July 10, 2002, transaction also entitled "Computation Worksheet for Non-Qualified Stock Option Exercise for Shares". The worksheet recorded that the option exercise resulted in the acquisition of the aforementioned 1,861 shares at a cost of $55,946.43 and their

sale at a $66,921.56 fair market value on the exercise date. The difference, $10,975.13, was recorded by Fluor on the worksheet as "taxable compensation" from the transaction. Fluor withheld amounts for Federal and State income and employment taxes from petitioner's $10,975.13 proceeds.

Fluor issued petitioner a Form W-2, Wage and Tax Statement, for 2002 that reported $102,226.81 under "Wages, tips, other compensation". The parties have stipulated that this amount represents the sum of $28,852.09 paid as salary to petitioner in 2002, the $62,399.59 in proceeds from the February 25, 2002, stock option transaction, and the $10,975.13 in proceeds from the July 10, 2002, stock option transaction. The Form W-2 reported $73,374.72 (i.e., the sum of the foregoing proceeds from stock option transactions) as an amount under "Nonqualified plans".

Following petitioner's receipt of the Form W-2, he contacted the payroll department at Fluor. Petitioner indicated his belief that the stock option transaction proceeds resulted in capital gain rather than compensation income and inquired as to why those amounts were included in the figure for "Wages, tips, other compensation" on the Form W-2. Petitioner was advised by the

Fluor payroll department that this was the manner in which the company reported such transactions.

Petitioner prepared petitioners' Federal income tax return for 2002. To reflect his belief that the Form W-2 issued to him by Fluor had incorrectly listed the stock option transaction proceeds as compensation income, petitioner placed a handwritten notation on the copy of the Form W-2 attached to petitioners' 2002 return. That notation indicated that the $102,226.81 amount listed under "Wages, tips, other compensation" consisted of "WAGES $28,852   CAPITAL GAINS $73,645".[4]

Petitioners reported a total of $65,690 as wages on the 2002 return, including $28,852.09 in wages for petitioner and $36,837.55 in wages for Mrs. Svoboda. Petitioner reported on Schedule D, Capital Gains and Losses, of the 2002 return what he calculated as the net result of the February and July 2002 stock option transactions; namely $51,469[5] of long-term capital gain,

---

[4] Petitioner appears to have made a mathematical error in calculating his "Capital Gains" figure, as $73,645 plus $28,852 does not equal the $102,226.81 amount listed on the Form W-2.

[5] There are two errors underlying this figure. First, the parties stipulated that the long-term capital gain that petitioners reported on Schedule D of their 2002 return from the 2002 stock option transactions was $56,949. However, the Schedule D is part of the record, and it demonstrates that the reported gain from the stock options transactions was $51,469. The figure to which the parties stipulated resulted from the erroneous treatment of a $2,740 loss on one block of Fluor stock as a gain, producing the $5,480 ($2,740 x 2) discrepancy between
(continued...)

treating the date of the options' grant as the acquisition date of the stock and the date of option exercise and sale as the sale date.

Following notification by respondent that the 2002 return was under examination, petitioner made several efforts to investigate the proper tax treatment of the two stock option transactions. In the course of his subsequent discussions with Internal Revenue Service personnel, petitioner was referred to IRS Publication 525, Taxable and Nontaxable Income.

---

[5](...continued) $56,949 and $51,469. We are not bound by stipulations of fact that appear contrary to the facts disclosed by the record, see Rule 91(e); Blohm v. Commissioner, 994 F.2d 1542, 1553 (11th Cir. 1993), affg. T.C. Memo. 1991-636, and accordingly find that petitioners reported $51,469 of long-term capital gain from the Fluor stock option transactions in 2002.

Second, petitioner conceded at trial that the sales price for the same block of Fluor stock was incorrectly reported on the Schedule D as $19,025 when it should have been $40,859, which results in a gain of $19,093 rather than the reported loss of $2,740. (Respondent described the correct gain as $19,025, but the documentary evidence suggests the gain is $19,093.) When a gain of approximately $19,000 is substituted for the reported loss of $2,740, the net long-term gain arising from petitioners' reporting of the Fluor stock option transactions approximates the $73,374.72 in proceeds from "Nonqualified plans" reported on the Form W-2 issued by Fluor to petitioner. We expect the parties to address any remaining discrepancies in their Rule 155 computations.

OPINION

Income on Exercise of Stock Options

Respondent determined that petitioners' 2002 return understated his compensation income by $73,374, an amount representing the aggregate difference between the option prices and sales prices of the Fluor stock petitioner acquired and sold in 2002 pursuant to stock options. Petitioners contend that the foregoing amount is capital gain because it was realized from the sale of stock acquired pursuant to incentive stock options.

Generally, the income tax treatment of the grant of an option to purchase stock in connection with the performance of services, and the transfer of stock pursuant to the exercise of such an option, is determined under section 83(a) and the regulations thereunder. Such stock options are known as "nonqualified stock options" or "nonstatutory stock options". The receipt of a nonqualified stock option does not generate income in the recipient unless the option has a readily ascertainable fair market value.[6] Instead, the recipient's exercise of the nonqualified option to acquire stock gives rise to gross income at the time of exercise, equal to the amount by which the fair market value of the stock at the exercise date

_____

[6] Neither party contends that the stock options held by petitioner had a "readily ascertainable fair market value" at the time that Fluor granted the options to petitioner. See sec. 83; sec. 1.83-1(a), Income Tax Regs.; sec. 1.83-7(a), Income Tax Regs.

exceeds the option price that he or she pays. Sec. 83(a); Racine v. Commissioner, T.C. Memo. 2006-162; sec. 1.83-7(a), Income Tax Regs. The recipient thereupon obtains a basis in the acquired stock equal to the option price plus any amount includible in gross income as a result of the option exercise. Any gain or loss upon the subsequent sale of the stock will be capital in character. Secs. 1001, 1221(a); sec. 1.83-4(b)(1), Income Tax Regs.

Certain employee stock options qualify for alternative treatment under the provisions of section 421. Specifically, section 421 applies to options that qualify as incentive stock options (ISOs) under section 422 (and to options that are issued pursuant to an employee stock purchase plan as defined in section 423). When the applicable section 422 requirements for an ISO are met, section 421 provides that no income shall result at the time of the transfer of stock upon the exercise of the option. Sec. 421(a)(1). The stock acquired through the ISO exercise will generally qualify as a capital asset in the hands of the employee, and the difference between the amount received on disposition of the stock and the employee's basis will be capital in character. Secs. 1001(a), 1221 and 1222; Spitz v. Commissioner, T.C. Memo. 2006-168; sec. 14a.422A-1, Q&A-1, Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981). However, if the stock acquired pursuant to an ISO is disposed of

by the option holder within 2 years of the granting of the option or within 1 year after the stock's transfer to him, section 421 does not apply, and the stock's acquisition and sale are taxed under the provisions of section 83. Sec. 422(a)(1); Spitz v. Commissioner, supra; sec. 14a.422A-1, Q&A-2(a), Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981).

Petitioners contend that petitioner acquired the Fluor stock at issue pursuant to ISOs. Their only evidence for this claim is petitioner's testimony to that effect. All other evidence in the record points to the contrary conclusion that the options petitioner held were nonqualified options. The computation worksheets provided to petitioner by Fluor concerning the two stock option transactions were each entitled "Computation Worksheet for Non-Qualified Stock Option Exercise for Shares", and each described the difference between the option price and the fair market value of the stock at exercise as either the "wage element" or "taxable compensation". The Form W-2 issued by Fluor to petitioner reported the proceeds from the stock option transactions under the "Nonqualified plans" category. Finally, Fluor collected withholding taxes with respect to the proceeds, which would not have been required with respect to the disposition of stock acquired pursuant to an ISO.[7] See Notice

---

[7] Moreover, had petitioner been granted ISOs (as he claims) which were exercised in 2002, he would have had alternative minimum taxable income in 2002 measured by the excess of the
(continued...)

2001-14, 2001-1 C.B. 516.

While on this record we are not persuaded that petitioner held ISOs, the result in this case is the same whether the stock was acquired pursuant to ISOs or nonqualified stock options. That is because it is undisputed that in both transactions petitioner exercised his option to acquire the stock, and sold the stock, on the same day. Thus, if one assumes petitioner held ISOs, he nonetheless would have forfeited the deferral and capital gains treatment provided in section 421(a), by virtue of his sale of the stock on the day it was transferred to him, in violation of the 1-year holding period mandated in section 422(a)(1). As a consequence, he would have realized ordinary income upon the disposition of the stock, under section 83(a), equal to the difference between the option price and the fair market value of the stock on the date of exercise. Sec. 421(b); Spitz v. Commissioner, supra; sec. 14a.422A-1, Q&A-2(a), Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981).

Alternatively, if one assumes petitioner held nonqualified stock options, then petitioners were required to recognize ordinary income, under section 83(a), upon the transfer of the stock to petitioner in 2002 pursuant to the exercise of his

---

[7](...continued)
Flour stock's fair market value on the exercise date over the exercise price. See Merlo v. Commissioner, 126 T.C. 205, 209 (2006).

options, equal to the difference between the option price and the
fair market value of the stock on the date of transfer.
Petitioner's sale of the stock on the same day generates no gain,
as his basis in the stock (consisting of his option price and the
amount of ordinary income recognized under section 83(a)) equaled
his sales price.

Petitioner contends, however, that his Fluor stock options
were ISOs and that he satisfied the holding period of section
422(a)(1).  That section provides as follows:

> SEC. 422. INCENTIVE STOCK OPTIONS
>
> (a) In General.--Section 421(a) shall apply with
> respect to the transfer of a share of stock to an
> individual pursuant to his exercise of an incentive
> stock option if--
>
> (1) no disposition of such share is made
> by him within 2 years from the date of the
> granting of the option nor within 1 year
> after the transfer of such share to him * * *

IRS Publication 525 (as applicable for the preparation of 2002
Federal income tax returns) provides an explanation of the
section 422(a)(1) holding period requirement as follows:

> If you receive a statutory stock option, do not
> include any amount in your income either when the
> option is granted or when you exercise it.  You have
> taxable income or deductible loss when you sell the
> stock that you bought by exercising the option.  Your
> income or loss is the difference between the amount you
> paid for the stock (the option price) and the amount
> you receive when you sell it.  You generally treat this
> amount as capital gain or loss and report it on
> Schedule D (Form 1040), *Capital Gains and Losses*, for

the year of the sale.

However, you may have ordinary income for the year that you sell the stock in either of the following situations.
- You do not meet the ***holding period requirement***. This situation applies only if you sell the stock within 1 year after its transfer to you or within 2 years after the option was granted.

Relying on Publication 525, petitioner interprets the section 422(a)(1) holding period provision as affording taxpayers a "choice": a taxpayer may comply with the holding period <u>either</u> by holding the option for 2 years after its grant, <u>or</u> by holding the stock for 1 year after its acquisition pursuant to the option.[8] In other words, petitioner interprets the two disjunctive holding periods as alternative <u>qualifying</u> conditions; that is, if either period is satisfied, then the holding period requirement is met. Therefore, in petitioner's view, he qualifies by virtue of his disposal of the stock more than 2 years after the grant of the options.

Neither section 422(a)(1), nor its explication in Publication 525, is susceptible to the interpretation advocated by petitioner. The language of section 422(a) is plain and clear:

<u>Section 421(a) shall apply</u> with respect to the transfer of a share of stock to an individual pursuant to his

---

[8] Petitioners' view of the language, as they argue on brief, is that "The word OR means a choice".

exercise of an incentive stock option <u>if</u>--

> (1) <u>no disposition</u> of such share <u>is made</u> by him <u>within 2 years from the date of the granting</u> of the option <u>nor within 1 year after the transfer of such share</u> to him * * * [Emphasis added.]

The language of Publication 525 is no less plain and clear: "You do not meet the holding period requirement * * * if you sell the stock within 1 year after its transfer to you or within 2 years after the option was granted." Thus, contrary to petitioner's interpretation, the two disjunctive holding periods are alternate <u>disqualifying</u> conditions; that is, if either obtains, section 421(a) does not apply. Since petitioner did not satisfy the one-year-after-transfer holding period, section 421(a) does not apply to the transfer of the Fluor stock to him.

We accordingly sustain respondent's determination that petitioners failed to report $73,374 of compensation income in 2002.

<u>Accuracy-Related Penalty</u>

Respondent determined that petitioners were liable for a section 6662(a) accuracy-related penalty based on a substantial understatement of income tax. See sec. 6662(a) and (b)(2). A "substantial understatement" exists for this purpose if the amount of tax required to be shown on the return exceeds that

shown by the greater of 10 percent of the tax required to be shown or $5,000. Sec. 6662(d)(1)(A).

The Commissioner has the burden of production under section 7491(c) with respect to the liability of any individual for a penalty imposed by the Internal Revenue Code and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination as to the penalties is incorrect or that the taxpayer had reasonable cause or substantial authority for his position. See id. at 447; sec. 1.6664-4, Income Tax Regs.

We have sustained respondent's determination of a $73,374 increase in petitioner's taxable wages for tax year 2002.[9] In petitioners' circumstances, the omission[10] would produce an understatement exceeding the greater of $5,000 or 10 percent of the tax required to be shown on their return. Accordingly,

---

[9] Petitioners' reporting of the proceeds from the stock option transactions as capital gains did not offset this omission, as the capital gains claimed with respect to the stock option transactions were absorbed by petitioners' reported capital losses in excess of $300,000.

[10] Petitioners have also conceded that they were not entitled to a $7,000 deduction claimed with respect to an IRA contribution. Petitioners have offered no argument to the effect that the portion of the underpayment attributable to this item is due to reasonable cause or any other mitigating factor.

respondent has satisfied his burden of production, and petitioners bear the burden of establishing the applicability of the reasonable cause exception.

A penalty under section 6662(a) will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

The regulations interpreting section 6664(c)(1) provide:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer. * * * [Sec. 1.6664-4(b)(1), Income Tax Regs.]

Petitioner emigrated to the United States more than 40 years ago and earned a master's degree in business administration after doing so. He was employed as an electrical engineer and manager by Fluor Corporation for many years and has taught applied economics.

Petitioner argues, in defense of his reporting of the stock option transactions as capital gain, that the income he received on account of the stock options was at risk from the time the options were granted until they were exercised. By contrast, petitioner argues, wage income is not at comparable risk. Thus, petitioner believes, stock options are more akin to a capital asset giving rise to capital gain than an item of compensation income. From an economic perspective, wherein petitioner's experience lies, there is some foundation for his position. Employee stock options are, however, given in exchange for services, and compensation for services generates ordinary income for Federal income tax purposes. Consequently, the Federal income tax treatment of employee stock options is a thornier issue than petitioner's observations would allow. Nonetheless, we conclude, in light of all the facts and circumstances, that petitioner's reporting of the income from the stock option transactions constituted an honest misunderstanding of the law that is reasonable in light of his experience, knowledge, and education. Consequently, there was reasonable cause for the understatement attributable to the failure to report the stock option proceeds as compensation income.

To reflect the foregoing, and after concessions by both parties,

Decision will be entered under Rule 155.