T.C. Memo. 2017-179

UNITED STATES TAX COURT

JAMES A. POWERS AND JENNIFER M. SCHERER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12693-13.                    Filed September 14, 2017.

<u>Thomas Laffitte Howard</u>, for petitioners.

<u>William J. Gregg</u> and <u>Deborah Aloof</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal

income tax, an addition to tax under section 6651(a)(1),[1] and accuracy-related

penalties under section 6662(a) as follows:

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(a) |
|---|---|---|---|
| 2008 | $144,753 | $24,775.80 | $28,950.60 |
| 2009 | 55,001 | --- | 11,000.20 |

After concessions by the parties, the issues remaining for decision are whether petitioners: (1) received unreported income in 2008 from the exercise of 4,000 nonqualified stock options; (2) are liable for an addition to tax under section 6651(a)(1) for the taxable year 2008; and (3) are liable for an accuracy-related penalty under section 6662(a) for the taxable year 2008.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the stipulation of certain settled issues, and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Maryland when they filed their petition.

Petitioners, James A. Powers and Jennifer M. Scherer, are husband and wife with the filing status of married filing jointly for the taxable years 2007, 2008, and 2009.

In 2000 Mr. Powers became the general counsel and vice president of regulatory affairs at comScore Networks, Inc. (comScore). In 2003 Mr. Powers and comScore negotiated and signed an employment termination agreement which

**[\*3]** included, among other things, comScore's granting him nonqualified stock options to acquire 100,000 shares of comScore stock for 25 cents per share. At the time the options were granted, they did not have a readily ascertainable fair market value. Mr. Powers stopped working for comScore in 2003.

In 2007, in anticipation of comScore's public offering, Mr. Powers' stock options were subject to a 1:5 reverse split, which resulted in his holding options to acquire 20,000 shares of comScore stock for $1.25 per share.

For 2007 comScore issued to Mr. Powers a Form W-2, Wage and Tax Statement, reporting that he had received $131,000 of "Wages, tips, other compensation". Robert Beatson II, petitioners' certified public accountant, prepared their 2007 Federal income tax return. Mr. Beatson contacted Mr. Powers to inquire about the circumstances surrounding comScore's issuance of the Form W-2. On April 14, 2008, Mr. Powers informed Mr. Beatson that the Form W-2 reported his exercise of 4,000 comScore options and that he paid $5,000 to exercise the options.

Petitioners timely filed their Federal income tax return for 2007, reporting $257,467 in wages. Of this amount, $126,000 was attributable to the exercise of

[*4] 4,000 comScore options.[2] Mr. Beatson arrived at $126,000 by subtracting $5,000, the amount Mr. Powers paid to exercise the 4,000 comScore options, from the $131,000 in wages reported on the Form W-2 issued to Mr. Powers.

Mr. Beatson prepared a Form 8919, Uncollected Social Security and Medicare Tax on Wages, which petitioners filed with their 2007 Federal income tax return. On the Form 8919 petitioners stated that the $131,000 in wages comScore reported on the Form W-2 was incorrect because Mr. Powers had $5,000 of unreimbursed employee expenses in 2007. Additionally, petitioners stated that comScore failed to withhold Social Security and Medicare taxes from Mr. Powers' wages.

For 2008 comScore issued to Mr. Powers and filed with the Internal Revenue Service (IRS) a Form 1099-MISC, Miscellaneous Income, reporting that Mr. Powers had received $250,104 of nonemployee compensation.

Petitioners received an extension of time until October 15, 2009, to file their 2008 Federal income tax return. Petitioners did not file by that date.

---

[2]We will not address whether petitioners' treatment of the $126,000 from the exercise of 4,000 options as "wage" income was improper in the light of Mr. Powers' explanation. However, he was correct in reporting the $126,000 as ordinary income.

**[*5]** On January 29, 2010, petitioners late-filed their 2008 Federal income tax return. Petitioners have conceded that they erroneously reported the net income from the exercise of comScore options in 2008 as long-term capital gain income and that they were required to include $250,104 of ordinary income from the exercise of 14,000 options, which matches the amount reported on the Form 1099-MISC that comScore issued to Mr. Powers and filed with the IRS. Petitioners contend that the $250,104 from the exercise of the 14,000 comScore options in 2008 represents the only income from the exercise of comScore options during 2008.

The IRS selected petitioners' 2008 and 2009 returns for examination. The IRS determined that petitioners received unreported income from the exercise of 18,000 comScore options in 2008. On March 8, 2013, respondent issued to petitioners a notice of deficiency for the taxable years 2008 and 2009. Petitioners timely filed a petition with this Court.

On January 13, 2017, respondent filed a motion for leave to file out of time an amended answer, seeking an increased deficiency, an increased addition to tax, and an increased accuracy-related penalty for 2008. By order dated February 2, 2017, we denied respondent's motion.

**[*6]**                              OPINION

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a), if the taxpayer provides credible evidence concerning any factual issue relevant to ascertaining the taxpayer's liability and complies with certain other requirements, the burden of proof shifts to the Commissioner as to the factual issue. Our conclusions here are based on a preponderance of the evidence, and thus the allocation of the burden of proof in this case is immaterial. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005); McGowen v. Commissioner, T.C. Memo. 2011-186, 2011 Tax Ct. Memo LEXIS 185, at *5 n.3.

1. Exercise of comScore Options

The issue we must decide is whether Mr. Powers exercised 4,000 options in December 2007, as petitioners contend or on January 17, 2008, as respondent contends.

In general, the tax treatment with respect to the grant of an option to purchase stock in connection with the performance of services, and the transfer of stock pursuant to the exercise of the option, is determined under section 83(a) and

[*7] the regulations thereunder. Kim v. Commissioner, T.C. Memo. 2007-14, 2007 Tax Ct. Memo LEXIS 14, at *11-*12; Svoboda v. Commissioner, T.C. Memo. 2006-235, 2006 Tax Ct. Memo LEXIS 239, at *8. Such options are known as "nonqualified stock options" or "nonstatutory stock options". Svoboda v. Commissioner, 2006 Tax Ct. Memo LEXIS 239, at *8.

If a nonqualified stock option does not have a readily ascertainable fair market value at the time of the grant, the exercise of the option gives rise to gross income at the time of the exercise, equal to the amount by which the fair market value of the stock at the exercise date exceeds the option price. Sec. 83(a); Svoboda v. Commissioner, 2006 Tax Ct. Memo LEXIS 239, at *9; sec. 1.83-7(a), Income Tax Regs. The taxpayer then obtains a basis in the acquired stock equal to the option price plus any amount includible in gross income as a result of the option exercise. Svoboda v. Commissioner, 2006 Tax Ct. Memo LEXIS 239, at *9. Any gain or loss on the subsequent sale of the stock will be capital. See secs. 1001, 1221(a); sec. 1.83-4(b)(1), Income Tax Regs.

There is no dispute that the comScore options were nonqualified stock options and did not have a readily ascertainable fair market value at the time the options were granted. The parties agree that Mr. Powers exercised 14,000 options between March and December 2008 but disagree as to whether Mr. Powers

[*8] exercised an additional 4,000 options in 2008. Accordingly, the question of whether petitioners received unreported income in 2008 from the exercise of the 4,000 options in dispute depends on whether Mr. Powers exercised the options in 2007 or in 2008.

Although neither petitioners nor comScore have any records relating to Mr. Powers' exercise of the options in dispute in 2007,[3] petitioners have demonstrated that Mr. Powers exercised these options in 2007.

In an email to Mr. Beatson dated April 14, 2008, Mr. Powers explained that he had exercised the 4,000 options in dispute in 2007. Mr. Powers sent the email in response to Mr. Beatson's request for information about the Form W-2 from comScore reporting that Mr. Powers had received $131,000 in wages. Mr. Powers explained that the wages reported on the Form W-2 were derived from his exercise of the options in dispute and that he paid $5,000 to exercise the options. The explanation on the Form 8919 that petitioners filed with their 2007 Federal income tax return is consistent. Although Mr. Beatson explained on the Form 8919 that the Form W-2 was incorrect because petitioners had $5,000 of unreimbursed

---

[3]Mr. Powers testified that he lost the exercise forms during the renovation of petitioners' house in 2009. Thomas S. Cushing, deputy general counsel of comScore, testified that comScore could not access Mr. Powers' stock option records from 2007.

[*9] employee expenses, Mr. Beatson credibly testified at trial that he reduced the $131,000 in wages by $5,000 on the basis of the information provided by Mr. Powers regarding his exercise of the options in dispute.

Petitioners' version of events is supported by the "Taxes Due and Paid Report" (report) prepared by comScore. The report covers Mr. Powers' exercise of comScore options from January 1 through December 31, 2008. Mr. Beatson testified that comScore prepared the report in response to a telephone call Mr. Powers made to comScore while Mr. Beatson and Laura Roland, the revenue agent assigned to petitioners' returns, were present. The report shows that Mr. Powers exercised 14,000 comScore options between March and December 2008 and received $250,104 of income therefrom. More importantly, the report is consistent with the Form 1099-MISC comScore issued to Mr. Powers and filed with the IRS. There is nothing in the report indicating that Mr. Powers exercised additional comScore options in January 2008.

At trial petitioners introduced a summary sheet created by Ms. Roland that covers Mr. Powers' exercise of comScore options in 2008. Ms. Roland used the report that comScore prepared to reconcile her summary sheet. The transactions on the summary sheet and the report are identical except that Ms. Roland's summary sheet also shows that Mr. Powers exercised 4,000 options in January

[*10] 2008. The summary sheet shows that Mr. Powers exercised the 4,000 options in dispute between January 7 and 8, 2008, which contradicts respondent's contention on brief that the options in dispute were exercised on January 17, 2008. Further, Ms. Roland incorrectly calculated the income that respondent alleges Mr. Powers received from exercising the options in dispute in January 2008. Under section 83(a), income from the exercise of nonqualified stock options without a readily ascertainable fair market value at the time of the grant is equal to the fair market value of the stock less the exercise price. Ms. Roland determined Mr. Powers' income from the alleged exercise as the price at which Mr. Powers' brokerage statements show that he sold 4,000 comScore shares between January 7 and 8, 2008, less the exercise price.

Respondent's primary piece of evidence in support of his position that petitioners exercised the 4,000 options in dispute on January 17, 2008, is petitioners' Morgan Stanley Smith Barney account statement for the period January 2008. The statement shows that on January 17, 2008, 4,000 shares of comScore stock were deposited into Mr. Powers' brokerage account, but the statement does not show that he exercised 4,000 comScore options on that date. There is no evidence that any options were exercised on January 17, 2008.

**[*11]**  Mr. Powers' brokerage statements also show that he sold 4,000 comScore shares between January 7 and 8, 2008.  On brief respondent agrees with this but fails to explain when Mr. Powers exercised the options to acquire these 4,000 shares.  Presumably, these shares had to be acquired before being sold.

At trial respondent asked Mr. Powers whether the 4,000 comScore shares he sold between January 7 and 8, 2008, were purchased on the open market.  Mr. Powers testified he did not purchase these shares on the open market, and there is nothing in the record to show that Mr. Powers had any comScore holdings except for the options he received in the 2003 termination agreement.

Mr. Powers testified that the 4,000 shares sold between January 7 and 8, 2008, were derived from a December 2007 exercise of the 4,000 options in dispute.  Mr. Powers' testimony is completely consistent with a December 2007 exercise of the 4,000 options in dispute and a subsequent January 7 and 8, 2008, sale of the 4,000 shares derived from these options.  There is a multitude of possible reasons why the shares obtained by the exercise of options in December 2007 were not sold until January 2008, but there is no evidence of a January 2008 exercise of options.

We conclude that Mr. Powers did not exercise the 4,000 options in dispute in 2008.  Accordingly, we reject respondent's determination that petitioners

**[*12]** received unreported income in 2008 from the exercise of the 4,000 comScore options in dispute.

## 2. Section 6651(a)(1) Addition to Tax

Although petitioners concede in the stipulation of settled issues that they are liable for the addition to tax under section 6651(a)(1) for failing to timely file their 2008 return, they now argue on brief that they are not liable for the addition to tax.[4] Stipulations are conclusive admissions and binding on the parties unless otherwise permitted by the Court or agreed upon by those parties. Rule 91(e); Stamos v. Commissioner, 87 T.C. 1451, 1454-1455 (1986).

Justice does not require that we disregard the stipulation, and respondent has not agreed to disregard the stipulation. Accordingly, we hold that petitioners are liable for the addition to tax under section 6651(a)(1) for the taxable year 2008.[5]

## 3. Section 6662(a) Accuracy-Related Penalty

Although petitioners concede in the stipulation of settled issues that they are liable for an accuracy-related penalty under section 6662(a) for the taxable year

---

[4]The parties stipulate: "Petitioners are liable for the late filing addition to tax, under Internal Revenue Code section 6651(a)(1), for the taxable year 2008."

[5]The addition to tax is based on the amount required to be shown as tax on the return. This amount will be determined in a Rule 155 computation.

[*13] 2008, petitioners now argue on brief that they are not liable for the accuracy-related penalty.[6]  Justice does not require that we disregard the stipulation, and respondent has not agreed to disregard the stipulation.  Accordingly, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a) for the taxable year 2008.[7]

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.

---

[6]The parties stipulate:  "Petitioners are liable for the accuracy-related penalty, under Code section 6662(a), for the taxable years 2008[.]"

[7]The sec. 6662(a) accuracy-related penalty is based on the amount of any underpayment of tax, which will be determined in a Rule 155 computation.