T.C. Memo. 2007-14

UNITED STATES TAX COURT

TAE M. & YOUNG J. KIM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13586-04.　　　　　Filed January 18, 2007.

Tae M. Kim and Young J. Kim, pro sese.

<u>Karen Lynne Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:　Respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a)[1] on, petitioners' Federal income tax (tax) for their taxable year 2002 of

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue.　All Rule references are to the Tax Court Rules of Practice and Procedure.

$8,411 and $1,682, respectively.

The issues remaining for decision for the year at issue are:

(1) Do petitioners have certain compensation income with respect to the exercise of certain stock options granted under an employee stock purchase plan?  We hold that they do.

(2) Do petitioners have certain claimed long-term capital losses?  We hold that they do not.

(3) Do petitioners have certain interest income from the United States Department of the Treasury?  We hold that they do.

(4) Do petitioners have certain income from the sale of certain stock?  We hold that they do.

(5) Did petitioners fail to include in the total interest income reported in their tax return certain interest from Washington Savings Bank?  We hold that they did not.

                         FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioners filed the petition in this case, they resided in Bowie, Maryland.

During 2002, petitioner Young J. Kim (Ms. Kim) was employed by Fannie Mae as a systems analyst.  At a time not disclosed by the record before January 17, 2002, Fannie Mae granted Ms. Kim certain options to buy Fannie Mae stock under an employee stock purchase plan (Fannie Mae ESPP).  Each option under that plan had an exercise price of $66 per share.

Pursuant to the Fannie Mae ESPP, on the dates indicated, Ms. Kim exercised certain options granted to her, and acquired the number of shares of Fannie Mae stock shown, when the Fannie Mae stock had the fair market value indicated:

| Date of Exercise | Number of Shares Acquired | Total Exercise Price | Fair Market Value of Shares Acquired on Date of Exercise |
|---|---|---|---|
| Jan. 17, 2002 | 138.351 | $9,131.17 | [1]$11,362.08 |
| Jan. 18, 2002 | 79.936 | 5,275.77 | [2]6,576.73 |
| Jan. 22, 2002 | 86.085 | 5,681.61 | [3]7,129.99 |
| Jan. 23, 2002 | 16.628 | 1,097.45 | [4]1,386.28 |

[1]Fair market value per share was $82.125
[2]Fair market value per share was $82.275
[3]Fair market value per share was $82.825
[4]Fair market value per share was $83.370

In order to have the money to pay the exercise price of the options exercised, on the dates indicated, Ms. Kim sold for the gross proceeds shown the following shares of Fannie Mae stock acquired as a result of the exercise of such options:

| Date | Number of Shares Sold | Gross Proceeds |
|---|---|---|
| Jan. 17, 2002 | 111.198 | [1]$9,136.19 |
| Jan. 18, 2002 | 64.248 | [2]5,289.03 |
| Jan. 22, 2002 | 69.190 | [3]5,728.23 |
| Jan. 23, 2002 | 13.364 | [4]1,114.87 |

[1]Sales Price per share was $82.161500
[2]Sales Price per share was $82.322123
[3]Sales Price per share was $82.789796
[4]Sales Price per share was $83.423100

On or about May 17, 2002, the United States Department of the Treasury (U.S. Treasury) issued a refund check for $1,585.99 with respect to petitioners' taxable year 1997, consisting of $1,203 of tax and $382.99 of interest.

On or about May 30, 2002, the U.S. Treasury issued a refund check for $1,101.39 with respect to petitioners' taxable year 1998, consisting of $862 of tax and $239.39 of interest.

Fannie Mae issued to Ms. Kim Form W-2, Wage and Tax Statement (Fannie Mae Form W-2), for her taxable year 2002. That form showed total wages, tips, and other compensation of $95,323.62. Such total wages, tips, and other compensation included $4,234.94 that was shown as "ESPP" in Box 14 of the Fannie Mae Form W-2. Fannie Mae also gave Ms. Kim a document entitled "2002 Gross Wage Analysis" (Fannie Mae wage analysis). That document showed, inter alia, $95,323.62 as "2002 W2 WAGES". Such wages included $4,234.94 that was shown as "ESPP-CEP" and "NON-PAYROLL EARNINGS" in the Fannie Mae wage analysis.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for their taxable year 2002 (petitioners' 2002 return). In petitioners' 2002 return, petitioners showed, inter alia, on page one "Wages, salaries, tips, etc." of $95,323.62 on line 7 and "**Taxable** interest" of $565.43 on line 8a and claimed a net capital loss of $3,000 on line 13. The $95,323.62 of "Wages, salaries, tips, etc." included the $4,234.94 that was shown as

"ESPP" in Box 14 of the Fannie Mae Form W-2.

In Schedule B—Interest and Ordinary Dividends (2002 Schedule B) included as part of petitioners' 2002 return, petitioners showed, inter alia, the following interest income:

| Name of Payer | Amount |
|---|---|
| Washington Savings Bank | $521.61 |
| BB&T | 21.30 |
| Chevy Chase Bank | 14.52 |

In the 2002 Schedule B, petitioners incorrectly showed the total of such interest income as $565.43.  The correct total is $557.43.  The total interest income of $565.43 shown in the 2002 Schedule B is the amount that petitioners reported as **"Taxable interest"** on page one, line 8a, of petitioners' 2002 return.

In Schedule D, Capital Gains and Losses (2002 Schedule D), included as part of petitioners' 2002 return, petitioners claimed a long-term capital loss and a net long-term capital loss of $3,117.40 from the sale during 2002 of 300 shares of "TWA".[2]  As prescribed by section 1211(b), petitioners claimed as a deduction in petitioners' 2002 return only $3,000 of such net capital loss.

Respondent issued to petitioners a notice of deficiency (notice) for their taxable year 2002.  In that notice, respondent determined, inter alia, to include in petitioners' gross income $622 of interest income from the U.S. Treasury, $16 of income

---

[2]Petitioners claimed no capital gains in their 2002 Schedule D.

from the sale of certain stock of a company described as "TRAVEL-ERS PROP", and $8 of interest income from Washington Savings Bank in excess of the $521.61 of interest income from that bank shown in the 2002 Schedule B included as part of petitioners' 2002 return. Respondent based the foregoing determinations on information returns that the respective payers provided to respondent.

On December 12, 2005, after petitioners filed the petition commencing this case, respondent received from petitioners Form 1040X, Amended U.S. Individual Income Tax Return, with respect to their taxable year 2002 (petitioners' 2002 amended return). In petitioners' 2002 amended return, petitioners reduced by $4,234.94 the adjusted gross income reported in petitioners' 2002 return and claimed a refund of $1,255. In support thereof, petitioners gave the following explanation in petitioners' 2002 amended return: "Excluding $4,234.94 ESPP gain from W-2. Including $4,234.94 ESPP gain in Capital Gains on Schedule D." Petitioners included as part of petitioners' 2002 amended return a copy of the 2002 Schedule D that they included as part of petitioners' 2002 return, on which they made certain changes. (We shall refer to the copy of the 2002 Schedule D on which petitioners made certain changes as petitioners' amended 2002 Schedule D.) Petitioners made the following changes in petitioners' amended 2002 Schedule D. Petitioners claimed short-term capital gains totaling $4,234.94 from the sales of certain Fannie

Mae stock that Ms. Kim acquired as a result of the exercise of certain options granted under the Fannie Mae ESPP. Petitioners also claimed in petitioners' amended 2002 Schedule D long-term capital losses of $6,410.70, $6,808.36, and $2,730 from the respective sales of certain stock of three companies. In petitioners' amended 2002 Schedule D, petitioners (1) added the three new long-term capital losses claimed in that amended schedule to the $3,117.40 long-term capital loss that they claimed in petitioners' 2002 Schedule D included as part of petitioners' 2002 return and (2) claimed long-term capital losses totaling $19,066.46. In petitioners' amended 2002 Schedule D, petitioners netted the $4,234.94 of short-term capital gains and the $19,066.46 of long-term capital losses claimed in that amended schedule and claimed a net capital loss of $14,831.52.[3]

---

[3]As discussed above, in petitioners' 2002 return, as prescribed by sec. 1211(b), petitioners claimed as a deduction only $3,000 of the $3,117.40 net capital loss claimed in the 2002 Schedule D included as part of that return. Thus, the $14,831.52 net capital loss claimed in petitioners' amended 2002 Schedule D did not entitle petitioners to a larger net capital loss deduction for 2002. However, the increased net capital loss claimed in petitioners' amended 2002 Schedule D did affect the amount of petitioners' claimed capital loss carryover to other taxable years. See sec. 1212(b)(1).

OPINION

Petitioners bear the burden of proving that the determinations in the notice are erroneous.[4]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Exercise of Fannie Mae ESPP Options</u>

In petitioners' 2002 return, petitioners included in "Wages, salaries, tips, etc." the $4,234.94 that was shown as "ESPP" in the Fannie Mae Form W-2.  At trial, petitioners take the position that such amount constitutes short-term capital gains.[5]  In support of their position, petitioners argue (1) that the income at issue arose from the sales of certain Fannie Mae stock that Ms. Kim acquired as a result of the exercise of certain options under the Fannie Mae ESPP, (2) that such stock was a capital asset, and (3) that therefore such income is capital in character.  Respondent counters that the $4,234.94 that petitioners reported in petitioners' 2002 return as "Wages, salaries, tips, etc." constitutes compensation income that petitioners properly reported in that return.

---

[4]Petitioners do not claim that the burden of proof shifts to respondent under sec. 7491(a).  In any event, petitioners have failed to establish that they satisfy the requirements of sec. 7491(a)(2).  On the record before us, we find that the burden of proof does not shift to respondent under sec. 7491(a).

[5]Petitioners took the same position in petitioners' 2002 amended return.

In general, the tax treatment with respect to the grant of an option to purchase stock in connection with the performance of services, and the transfer of stock pursuant to the exercise of such an option, is determined under section 83(a) and the regulations thereunder.[6]

Under section 83(a), a taxpayer who receives an option in connection with the performance of services has compensation income in the year in which the option is granted to the taxpayer if the option has a readily ascertainable fair market value at the time of grant. Sec. 1.83-7(a), Income Tax Regs. If the option does not have a readily ascertainable fair market value at the time of grant, the exercise of the option gives rise to compensation income in the year of exercise.[7] Such compensation income is equal to the amount by which the fair market value of the stock on the date (exercise date) of the exercise of the option pursuant to which the stock was transferred to the taxpayer exceeds the price (option price) that the taxpayer paid to acquire the stock under the option.[8] Sec. 83(a); sec. 1.83-7(a), Income Tax Regs.

---

[6]Svoboda v. Commissioner, T.C. Memo. 2006-235.

[7]There is no dispute between the parties that none of the options granted to Ms. Kim pursuant to the Fannie Mae ESPP had a "readily ascertainable fair market value" at the time of grant.

[8]Svoboda v. Commissioner, supra.

Section 421(a) provides an exception to the tax treatment prescribed by section 83 for certain types of employee plans, including employee stock purchase plans such as the Fannie Mae ESPP involved here. Section 421(a) provides, inter alia, that no income will result when a taxpayer acquires stock upon the exercise of an option granted under an employee stock purchase plan, as defined in section 423(b). Sec. 421(a)(1). In general, the stock so acquired qualifies as a capital asset in the hands of the taxpayer. When the taxpayer disposes of such stock, the difference between the amount received on such disposition and the taxpayer's basis is capital in character. See secs. 421, 1001, 1221, 1222; cf. sec. 14a.422A-1, Q&A-1, Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981).[9] If, however, the taxpayer disposes of the stock acquired pursuant to an employee stock purchase plan within two years of the granting of the option or within one year after the transfer of the stock to the taxpayer, such disposition is a "disqualifying disposition". See secs. 421(b), 423(a)(1). In that event, the taxpayer is required to recognize for the year of disposition compensation income that is equal to the amount by which the fair market value of the stock on the exercise date exceeds the option price of such stock. Secs. 83(a), 421(b); sec. 1.83-7(a), Income Tax Regs.;

---

[9]See also Humphrey v. Commissioner, T.C. Memo. 2006-242; Svoboda v. Commissioner, supra.

cf. sec. 14a.422A-1, Q&A-1, Temporary Income Tax Regs., 46 Fed. Reg. 61840 (Dec. 21, 1981);[10] see also Xilinx v. Commissioner, 125 T.C. 37, 41 n.5 (2005).

Ms. Kim sold 258 of the 321 shares of Fannie Mae stock that she acquired under the Fannie Mae ESPP on the respective dates on which such shares were transferred to her as a result of her exercising certain stock options under that plan.

On the record before us, we find that petitioners properly reported the $4,234.94 at issue as compensation income in petitioners' 2002 return.[11]

Certain Claimed Long-Term Capital Losses

Petitioners contend that, in addition to the $3,117.40 long-term capital loss that petitioners claimed in petitioners' 2002 return, petitioners have $15,949.06 of long-term capital losses

---

[10]See also Svoboda v. Commissioner, supra.

[11]Respondent claimed for the first time in respondent's opening brief that, in addition to the $4,234.94 of compensation income reported in petitioners' 2002 return with respect to Ms. Kim's exercise of the options granted to her under the Fannie Mae ESPP, petitioners have a $5.34 net short-term capital gain from the respective sales of certain Fannie Mae stock that Ms. Kim acquired as a result of such exercise. We conclude that if we were to consider whether respondent's claim is correct, petitioners, who were pro sese, would be substantially disadvantaged. We shall not consider respondent's claim. See Considine v. Commissioner, 74 T.C. 955, 964-966 (1980). We note, and respondent agrees, that the $5.34 net short-term gain that respondent claims petitioners have would not affect the amount of the deficiency for the year at issue. Assuming arguendo that petitioners have such a net short-term gain, any such gain would affect the amount of the net capital loss carryover to other taxable years. See sec. 1212(b)(1).

for their taxable year 2002, or a total of $19,066.46 for that year.  In support of that contention, petitioners rely on petitioners' 2002 amended return, in which petitioners claimed such additional long-term capital losses.

A tax return is nothing more than a statement of a taxpayer's position and does not establish the existence or the amount of any item shown therein.  See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

On the record before us, we find that petitioners have failed to carry their burden of establishing that they have for their taxable year 2002 long-term capital losses of $15,949.06 in addition to the long-term capital loss of $3,117.40 claimed in petitioners' 2002 return.

Interest From the U.S. Treasury

Respondent determined that petitioners have for the year at issue $622 of interest income from the U.S. Treasury.  In his direct testimony, petitioner Tae M. Kim (Mr. Kim) testified that petitioners were unaware of any such interest.  On cross-examination, Mr. Kim conceded that petitioners received the respective refund checks that the U.S. Treasury issued to petitioners with respect to their taxable years 1997 and 1998.  The refund check issued with respect to petitioners' taxable year 1997 included interest of $382.99, and the refund check with respect to their taxable year 1998 included interest of $239.39.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they did not have for their taxable year 2002 interest income of $622 from the U.S. Treasury.

Sale of Certain Stock

Respondent determined that petitioners have for the year at issue $16 of income from the sale of certain stock of a company described as "TRAVELERS PROP". Mr. Kim testified that petitioners were unaware of any such income.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they did not have for their taxable year 2002 income of $16 from the sale of certain stock of a company described as "TRAVELERS PROP".

Interest From Washington Savings Bank

Respondent determined that, although petitioners reported $521.61 of interest income from Washington Savings Bank in the 2002 Schedule B included as part of petitioners' 2002 return, they failed to report for the year at issue $8 of interest income from that bank. We have found that petitioners showed $565.43 as the total of the three items of interest income reported in the 2002 Schedule B included as part of petitioners' 2002 return and as "**Taxable** interest" on page one, line 8a, of that return. We have also found that the correct total of the three items of interest income reported in the 2002 Schedule B would have been

$557.43, or $8 less than the total interest income of $565.43 shown in that schedule and page one of that return.

On the record before us, we reject respondent's determination that petitioners failed to include in income for their taxable year 2002 $8 of interest income from Washington Savings Bank.

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of respondent,

<u>Decision will be entered under Rule 155</u>.