T.C. Memo. 2007-223

UNITED STATES TAX COURT

TAE M. & YOUNG J. KIM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13586-04.                    Filed August 13, 2007.

Tae M. and Young J. Kim, pro sese.

<u>Michael T. Sargent</u>, for respondent.


MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This matter is before the Court on peti-
tioners' motion filed pursuant to Rule 231[1] for an award under
section 7430 of reasonable litigation costs (petitioners' mo-

---

[1]All Rule references are to the Tax Court Rules of Practice
and Procedure.  All section references are to the Internal
Revenue Code (Code) in effect at all relevant times.

tion).  Neither party has requested a hearing, and we conclude
that a hearing is not necessary.  Rule 232(a)(2).  Based on the
submissions of the parties, we shall deny petitioners' motion.

## Background

The record establishes and/or the parties do not dispute the
following.[2]

During 2002, petitioner Young J. Kim (Ms. Kim) was employed
by Fannie Mae.  At a time not disclosed by the record before
January 17, 2002, Fannie Mae granted Ms. Kim certain options
(Fannie Mae options) to buy Fannie Mae stock under an employee
stock purchase plan (Fannie Mae ESPP).

Pursuant to the Fannie Mae ESPP, on four dates in January
2002, Ms. Kim exercised certain Fannie Mae options and acquired
certain shares of Fannie Mae stock.  In order to have the money
to pay the exercise price of the options exercised, on the dates
on which she exercised such options, Ms. Kim sold for certain
gross proceeds certain shares of Fannie Mae stock acquired as a
result of the exercise of such options.

Fannie Mae issued to Ms. Kim Form W-2, Wage and Tax State-
ment (Fannie Mae Form W-2), for her taxable year 2002.  That form
showed total wages, tips, and other compensation of $95,323.62.

---

[2]We incorporate herein by reference the Court's Memorandum
Findings of Fact and Opinion in Kim v. Commissioner, T.C. Memo.
2007-14 (Court's Opinion), and set forth the portions of that
Opinion that are relevant to our disposition of petitioners'
motion.

Such total wages, tips, and other compensation included $4,234.94 that was shown as "ESPP" in Box 14 of the Fannie Mae Form W-2. Fannie Mae also gave Ms. Kim a document entitled "2002 Gross Wage Analysis" (Fannie Mae wage analysis). That document showed, inter alia, $95,323.62 as "2002 W2 WAGES". Such wages included $4,234.94 that was shown as "ESPP-CEP" and "NON-PAYROLL EARNINGS" in the Fannie Mae wage analysis.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for their taxable year 2002 (petitioners' 2002 return). In petitioners' 2002 return, petitioners showed, inter alia, on page one "Wages, salaries, tips, etc." of $95,323.62 on line 7. The $95,323.62 of "Wages, salaries, tips, etc." included the $4,234.94 that was shown as "ESPP" in Box 14 of the Fannie Mae Form W-2.

Respondent issued to petitioners a notice of deficiency for their taxable year 2002 (2002 notice). In that notice, respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a) (section 6662(a) determination) on, petitioners' Federal income tax (tax) for that year of $8,411 and $1,682, respectively. In making those determinations, respondent determined to include in petitioners' gross income the following amounts: (1) $21,267 of gross proceeds from certain broker transactions ($21,267 gross proceeds determination), (2) $622 of interest income from the United States Department of the Treasury

($622 interest determination), (3) $16 of income from the sale of certain stock of a company described as "TRAVELERS PROP" ($16 Travelers Prop. determination), and (4) $8 of interest income from Washington Savings Bank ($8 WSB interest determination).[3] Respondent indicated in the 2002 notice that, in making the determinations in that notice to include such amounts in petitioners' gross income, respondent used the information set forth in certain information returns that respondent required the payers of such amounts to provide to respondent and the taxpayer-payees. In the 2002 notice, respondent (1) summarized the information in each such information return pertaining to petitioner Tae M. Kim (Mr. Kim) or to Ms. Kim and (2) included the address of each payer and the account number for Mr. Kim or Ms. Kim shown by each payer in each such return.

In making the $21,267 gross proceeds determination in the 2002 notice, respondent relied on four Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions (Form 1099-B),[4] that EquiServe Inc. (EquiServe) provided, inter alia, to respondent (EquiServe Forms 1099-B) with respect to Ms. Kim and that showed

---

[3]Petitioners reported $521.61 of interest income from Washington Savings Bank in Schedule B-Interest and Ordinary Dividends included as part of petitioners' 2002 return.

[4]The Court takes judicial notice that respondent requires certain payers to use Form 1099-B in order to report, inter alia, "Gross proceeds" or "Gross proceeds less commissions and option premiums" from broker transactions.

a total of $21,267 as "Gross proceeds" ($21,267 of gross proceeds) from broker transactions described as "EMP PLN SHRS SOLD".

Petitioners timely filed a petition with the Court with respect to the 2002 notice. In the petition, petitioners alleged in pertinent part: "The petitioners disagree with IRS in the determination of the deficiency because it was based on the insufficient and inaccurate information."

On September 16, 2004, respondent filed an answer. In the answer, respondent denied that the determinations in the 2002 notice were incorrect and requested "that the relief sought in the petition be denied and that respondent's determination, as set forth in the notice of deficiency, be in all respects approved."

At various times not disclosed by the record after petitioners filed the petition in this case, respondent made requests to petitioners for information about the $21,267 of gross proceeds shown in the EquiServe Forms 1099-B. Petitioners did not provide any information or explanation in response to those requests.

As discussed above, respondent included in the 2002 notice the address of each payer who provided respondent with an information return with respect to Mr. Kim or Ms. Kim, including the address of Equiserve shown in the EquiServe Forms 1099-B and the account number for Ms. Kim shown in those forms. Nonetheless, on August 24, 2005, petitioners sent respondent a letter that stated

in pertinent part:

>We received your letter dated August 12, 2005 concerning Stipulation of Facts in preparation of Tax Court hearing in the case.  In order to respond accurately and diligently in the process, we need the information and documents in relation to UNREPORTED INVESTMENT INCOME $21,283.00 including the follows:

>- Copies of all IRS documents and reports indicating petitioners' Unreported Investment Income $21,283.00.
>- Name and address of broker or agent who conducted the transaction for petitioners in generating the unreported investment income $21,283.00.

>    *     *     *     *     *     *     *

>Since the required process has to be accomplished without delay, we request your swift response in this matter.  We are unable to attend August 31, 2005 conference with you since we need to contact the broker/agent and verify the investment income of $21,283.00.  [Reproduced literally.]

On September 9, 2005, petitioners sent respondent another

letter that stated in pertinent part:

>We wrote a letter dated August 24, 2005 to you requesting documents IRS has in relation to the petitioners' UNREPORTED INVESTMENT INCOME $21,283.00 and other.  We have not received them from you.

>Since we do not know what security/stock generated investment income $21,283.00 and who was the agent/broker for the sale or transaction in generating investment income $21,283.00 for petitioners, we need copies of document and/or report IRS received from agent/broker or any company as to petitioners' investment income $21,283.00.

>We need agent/broker's name and mailing address to contact them to ask how the $21,283.00 investment income was generated in the case for petitioners. [Reproduced literally.]

On September 22, 2005, petitioners sent respondent a third

letter that stated in pertinent part:

> We made written requests to you twice to receive copies of the documents as stated in the previous letters. But, we have not received any response from you.
>
> We again request copies of the documents in relation to unreported investment income. If we do not hear from you very soon, we may notify this matter to Tax Court judge. [Reproduced literally.]

On September 30, 2005, respondent sent petitioners a letter in which respondent restated the information shown in the EquiServe Form 1099-B's that respondent had summarized in the 2002 notice, including the address of EquiServe and the account number of Ms. Kim shown in such forms.

At a time not disclosed by the record after petitioners failed to provide any information or explanation in response to respondent's requests to them for information about the $21,267 of gross proceeds shown in the EquiServe Forms 1099-B, but before December 2005, respondent asked Computershare (formerly EquiServe) for information about such gross proceeds shown in such forms. Respondent also asked Fannie Mae for any relevant information.

On a date in December 2005 before December 19, respondent received certain information from Fannie Mae relevant to the $21,267 gross proceeds determination. Based upon that information, respondent concluded (1) that the total wages, tips, and other compensation shown in the Fannie Mae Form W-2 included an amount of compensation, i.e., $4,234.94, resulting from Ms. Kim's

exercise of certain Fannie Mae options and (2) that petitioners had included that amount in Wages, salaries, tips, etc. in petitioners' 2002 return. Based upon the information that Fannie Mae provided to respondent in December 2005, respondent further concluded that the $21,267 of gross proceeds shown in the EquiServe Forms 1099-B constituted gross proceeds from the sales of certain Fannie Mae stock that Ms. Kim acquired as a result of her exercise of certain Fannie Mae options.

As a result of having received in December 2005 and analyzed certain information from Fannie Mae, on December 19, 2005, before the trial in this case, respondent conceded the $21,267 gross proceeds determination and the section 6662(a) determination.[5]

On December 12, 2005, respondent received from petitioners Form 1040X, Amended U.S. Individual Income Tax Return, with respect to their taxable year 2002 (petitioners' 2002 amended return). In petitioners' 2002 amended return, petitioners reduced by $4,234.94 the adjusted gross income reported in petitioners' 2002 return and claimed a refund of $1,255. In support thereof, petitioners gave the following explanation in petitioners' 2002 amended return: "Excluding $4,234.94 ESPP gain from W-2. Including $4,234.94 ESPP gain in Capital Gains on

---

[5]Respondent conceded the section 6662(a) determination even though that determination was based on not only the $21,267 gross proceeds determination but also other determinations in the 2002 notice that the Court ultimately resolved in favor of respondent.

Schedule D." Petitioners included as part of petitioners' 2002 amended return a copy of Schedule D, Capital Gains and Losses (2002 Schedule D), that they included as part of petitioners' 2002 return, on which they made the following changes:[6] Petitioners claimed (1) short-term capital gains totaling $4,234.94 from the sale of certain Fannie Mae stock that Ms. Kim acquired as a result of her exercise of the Fannie Mae options and (2) long-term capital losses totaling $15,949.06 from the sale of certain stock of three companies. In petitioners' amended 2002 Schedule D, petitioners (1) added the $15,949.06 of additional long-term capital losses claimed in that amended schedule to the $3,117.40 of long-term capital loss claimed in petitioners' 2002 Schedule D included as part of petitioners' 2002 return and (2) as a result, claimed total long-term capital losses for their taxable year 2002 totaling $19,066.46. In petitioners' amended 2002 Schedule D, petitioners netted the $4,234.94 of short-term capital gains and the $19,066.46 of long-term capital losses claimed in that amended schedule and, as a result, claimed a net capital loss of $14,831.52.[7] Respondent did not accept as cor-

---

[6]We shall refer to the copy of the 2002 Schedule D on which petitioners made certain changes as petitioners' amended 2002 Schedule D.

[7]In petitioners' 2002 return, as prescribed by sec. 1211(b), petitioners claimed as a deduction only $3,000 of the $3,117.40 net capital loss claimed in the 2002 Schedule D included as part of that return. Thus, the $14,831.52 net capital loss claimed in
(continued...)

rect petitioners' 2002 amended return.

In their pretrial memorandum, during trial, and on brief, petitioners focused only on the increases in short-term capital gains and long-term capital losses of $4,234.94 and $15,949.06, respectively, claimed in petitioners' 2002 amended return, and not on any of the determinations in the 2002 notice that respondent did not concede, including the $8 WSB interest determination. (We shall refer to the claimed respective increases in short-term capital gains and long-term capital losses as petitioners' alleged capital gain issue and petitioners' alleged capital loss issue, respectively.) It was only when the Court asked Mr. Kim, petitioners' only witness at trial, about the $8 WSB interest determination that petitioners even addressed that determination. The following exchange took place during Mr. Kim's direct testimony:

> THE COURT: * * * you also don't have any information about the interest income from Washington Savings Bank?
>
> THE WITNESS: No. No. Actually, when we prepare the 1040 for 2002, I mean, we diligently tried to get an information, diligently tried to report every income we have, even penny, but, I mean, there may be, I don't know, maybe some other matter. But we still believe that what we reported is very, very accurate and the

---

[7](...continued)
petitioners' amended 2002 Schedule D did not entitle petitioners to a larger net capital loss deduction for 2002. However, the increased net capital loss claimed in petitioners' amended 2002 Schedule D did affect the amount of petitioners' claimed capital loss carryover to other taxable years.

1040 we reported is actually that we reported more than we should.  That means that we overpaid.  That's what we think.  [Transcript reproduced literally.]

On cross-examination, respondent's counsel asked Mr. Kim certain questions about the $8 WSB interest determination that the Court raised with Mr. Kim during his direct testimony.  Those questions and Mr. Kim's answers were:

Q     Mr. Kim, did you have an account with Washington Savings Bank in 2002?

A     I think in year 2002 probably yes.

Q     What type of account was it?  Do you remember?

A     I don't remember.

Q     A checking account?

A     I mean, that's my guess, but I do not want to -- probably saving, but maybe --

THE COURT: He doesn't know for sure.

THE WITNESS: Yeah, I don't know.

BY MS. BAKER:

Q     Do you recall if any of those accounts earned interest?

A     Oh, yes.  Yes.

Q     Do you know how much interest you earned on those accounts during 2002?

A     I don't remember.  I just received the report from them and I reflected that one.

Q     Do you have a copy of that report?

A     At this time, no.  [Transcript reproduced literally.]

In the Court's Opinion, the Court addressed the $622 interest determination, the $16 Travelers Prop. determination, the $8 WSB interest determination, petitioners' alleged capital gain issue, and petitioners' alleged capital loss issue. In the Court's Opinion, the Court held for respondent on all of the foregoing issues except the $8 WSB interest determination.

In petitioners' motion and the affidavit attached thereto, petitioners claimed the following litigation costs (claimed litigation costs):

    Tax Court filing fee: $60.00
    Mailing costs: $90.15
    Delivery fee: $330.00
    Consultation costs: $2,900.00
    Document preparation: $640.45
    Parking fee: $96.40
    Transportation: $647.50
    Telephone calls: $82.40

Petitioners did not provide any additional information with respect to the claimed litigation costs.

## Discussion

As pertinent here, section 7430(a) authorizes an award to the prevailing party of reasonable litigation costs incurred in connection with a case brought in the Court against the Commissioner of Internal Revenue (Commissioner) involving the determination of any tax, interest, or penalty under the Code. The term "prevailing party" means, in general, any party who (1) has substantially prevailed with respect to (a) the amount in controversy, sec. 7430(c)(4)(A)(i)(I), or (b) the most significant

issue or set of issues presented, sec. 7430(c)(4)(A)(i)(II), and (2) meets the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (net worth requirements), sec. 7430(c)(4)(A)(ii). In order to qualify for an award under section 7430(a), the prevailing party must (1) have exhausted the available administrative remedies, sec. 7430(b)(1), and (2) not have unreasonably protracted the court proceeding, sec. 7430(b)(3). The party moving for an award under section 7430(a) has the burden of establishing that all of the foregoing criteria have been satisfied and that the costs claimed are reasonable litigation costs incurred in connection with the court proceeding under section 7430(a)(2). Rule 232(e); see also Corson v. Commissioner, 123 T.C. 202, 205-206 (2004).

There is an exception to the definition in section 7430(c)(4)(A) of the term "prevailing party". That exception is found in section 7430(c)(4)(B), which provides: "A party shall not be treated as the prevailing party in a proceeding * * * if the United States establishes that the position of the United States in the proceeding was substantially justified." Sec. 7430(c)(4)(B)(i).

The position of the United States is substantially justified if it "is one that is 'justified to a degree that could satisfy a reasonable person' or that has a 'reasonable basis both in law and fact.' Pierce v. Underwood, 487 U.S. 552, 565 (1988)".

Swanson v. Commissioner, 106 T.C. 76, 86 (1996).  "A position has a reasonable basis in fact if there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See Pierce v. Underwood, supra at 564-565."  Corkrey v. Commissioner, 115 T.C. 366, 373 (2000).  In determining whether the position of the Commissioner was substantially justified, we must "consider the basis for respondent's legal position and the manner in which the position was maintained."  Wasie v. Commissioner, 86 T.C. 962, 969 (1986).  The fact that the Commissioner concedes an issue is not conclusive as to whether the Commissioner's position with respect to that issue was substantially justified.  See Corkrey v. Commissioner, supra; Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, supra at 968-969.

In respondent's response to petitioners' motion, respondent indicates that petitioners have substantially prevailed with respect to the amount in controversy within the meaning of section 7430(c)(4)(A)(i)(I).  However, respondent argues that respondent's position was substantially justified with respect to the $21,267 gross proceeds determination, the $622 interest determination, the $16 Travelers Prop. determination, the section 6662(a) determination, petitioners' alleged capital gain issue, and petitioners' alleged capital loss issue.  Therefore, according to respondent, petitioners are not the prevailing party

within the meaning of section 7430(c)(4) with respect to any of those issues. Respondent does not maintain that respondent's position with respect to the $8 interest determination was substantially justified.

Respondent concedes in respondent's response to petitioners' motion that petitioners have exhausted the available administrative remedies, see sec. 7430(b)(1), and does not dispute that petitioners meet the net worth requirements, see sec. 7430(c)(4)(A)(ii). However, respondent argues that petitioners unreasonably protracted the proceeding, see sec. 7430(b)(3), and that petitioners have not provided any information that establishes that they incurred the claimed litigation costs, the issue or issues to which such claimed costs relate, the amount of such claimed costs incurred with respect to each such issue, and that such claimed costs are reasonable, see sec. 7430(a)(2).

Because respondent has taken an issue-by-issue approach in advancing respondent's arguments in support of respondent's position that the Court should deny petitioners' motion, we shall do the same. See Swanson v. Commissioner, supra at 102.

As pertinent here, the position of respondent for purposes of section 7430(c)(7)(A) with respect to an issue in this case is the position first taken by respondent with respect to that issue. See Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997). With respect to the determinations in the 2002 notice,

respondent's position for purposes of section 7430(c)(7)(A) is that set forth in the answer. See id. With respect to petitioners' alleged capital gain issue and petitioners' alleged capital loss issue, respondent's position for purposes of section 7430(c)(7)(A) is that set forth in respondent's pretrial memorandum.[8]

We first address respondent's position for purposes of section 7430(c)(7)(A) with respect to the $622 interest determination, the $16 Travelers Prop. determination, petitioners' alleged capital gain issue, and petitioners' alleged capital loss issue. In the Court's Opinion, the Court held in favor of respondent, and against petitioners, with respect to each of those matters. On the record before us, we find (1) that respondent has met respondent's burden under section 7430(c)(4)(B)(i)

_____

[8]Petitioners did not raise petitioners' alleged capital gain issue and petitioners' alleged capital loss issue until Dec. 12, 2005, when respondent received petitioners' 2002 amended return. As a result, respondent was not able to take a position with respect to either of those issues in the answer that respondent filed on Sept. 16, 2004. In respondent's pretrial memorandum, respondent indicated that if the Court were to rule that petitioners' 2002 amended return is admissible into evidence, a trial would be necessary with respect to the issues raised therein. However, respondent did not elaborate further in respondent's pretrial memorandum. At trial, respondent made clear that respondent disagreed with petitioners' claims regarding petitioners' alleged capital gain issue and petitioners' alleged capital loss issue. However, respondent did not elaborate further. It was only on brief that respondent gave reasons in support of respondent's position in respondent's pretrial memorandum that petitioners are not entitled to the respective increases in short-term capital gains and long-term capital losses claimed in petitioners' 2002 amended return.

of establishing that respondent's position was substantially justified and (2) that petitioners are not the prevailing party under section 7430(c)(4) with respect to each such matter.[9]

We next address respondent's position for purposes of section 7430(c)(4)(A) with respect to the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on the respective portions of the underpayment for petitioners' taxable year 2002 (2002 underpayment) that were attributable to the $622 interest determination and the $16 Travelers Prop. determination. For the reasons set forth above, on the record before us, we find (1) that respondent has met respondent's burden under section 7430(c)(4)(B)(i) of establishing that respondent's position was substantially justified and (2) that petitioners are not the prevailing party under section 7430(c)(4) with respect to the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on such respective portions of the 2002 underpayment.[10]

We next address respondent's position for purposes of section 7430(c)(7)(A) with respect to the $21,267 gross proceeds determination. The Court has held that "whenever there is a

---

[9]Since we have found that petitioners are not the prevailing party under sec. 7430(c)(4), we need not, and shall not, address any of the other requirements in sec. 7430 that petitioners must satisfy in order to be entitled to litigation costs under sec. 7430(a).

[10]See _supra_ note 9.

factual determination, the Commissioner is not obliged to concede a case until the Commissioner receives the necessary documentation to prove the taxpayer's contentions", <u>Corkrey v. Commissioner</u>, 115 T.C. at 375 n.5, and that "after the Commissioner receives the proper documentation, a reasonable period of time must be given to analyze the documents and make adjustments accordingly", <u>id.</u>  On numerous occasions, the Court has found that, in the absence of evidence undermining the reliability of information returns provided to the Commissioner or otherwise substantiating a taxpayer's contentions, reliance by the Commissioner on information returns is substantially justified.  See, e.g., <u>id.</u>

In the instant case, respondent relied on the EquiServe Forms 1099-B in making the $21,267 gross proceeds determination. At various times, respondent made requests to petitioners for information about such gross proceeds.  Petitioners did not provide any information or explanation in response to those requests.  It was only after respondent requested information from Computershare (formerly EquiServe) and Fannie Mae, and received in December 2005 relevant information from Fannie Mae, that respondent had any evidence showing that respondent's $21,267 gross proceeds determination was incorrect.  On December 19, 2005, shortly after having received that information from Fannie Mae, respondent conceded that determination.  On the

record before us, we find (1) that respondent has met respondent's burden under section 7430(c)(4)(B)(i) of establishing that respondent's position was substantially justified and (2) that petitioners are not the prevailing party under section 7430(c)(4) with respect to the $21,267 gross proceeds determination.[11]

We next address respondent's position for purposes of section 7430(c)(7)(A) with respect to the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on the portion of the 2002 underpayment that was attributable to the $21,267 gross proceeds determination. Respondent conceded the section 6662(a) determination at the time respondent conceded the $21,267 gross proceeds determination. For the reasons set forth above, on the record before us, we find (1) that respondent has met respondent's burden under section 7430(c)(4)(B)(i) of establishing that respondent's position was substantially justified and (2) that petitioners are not the prevailing party under section 7430(c)(4) with respect to the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on the portion of the 2002 underpayment that was attributable to the $21,267 gross proceeds determination.[12]

We now address whether petitioners are entitled to litiga-

---

[11]See _supra_ note 9.

[12]See _supra_ note 9.

tion costs under section 7430(a) in connection with the $8 WSB interest determination and the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on the portion of the 2002 underpayment that was attributable to that determination. As discussed above, respondent does not maintain that respondent's position with respect to the $8 WSB interest determination was substantially justified under section 7430(c)(4)(B). However, according to respondent, "this issue did not require a large expenditure of time or resources. The bulk of the trial and the expense of the proceeding related to the capital gains issue raised by petitioners."

In their pretrial memorandum, during trial, and on brief, petitioners focused only on petitioners' alleged capital gain issue and petitioners' alleged capital loss issue, and not on, inter alia, the $8 WSB interest determination. It was only when the Court asked Mr. Kim during his direct testimony whether petitioners had any information bearing on the $8 WSB interest determination that petitioners even addressed that determination. On the record before us, we find it difficult to believe that petitioners incurred any litigation costs before, during, or after trial with respect to the $8 WSB interest determination or the section 6662(a) determination to the extent that determination imposed an accuracy-related penalty on the portion of the

2002 underpayment that was attributable to that determination.[13]
On that record, we find that petitioners have failed to carry
their burden of establishing that they incurred any litigation
costs with respect to those matters.[14]

Based upon our examination of the entire record before us,
we find that petitioners have failed to carry their burden of
establishing that they are entitled to litigation costs under
section 7430(a).

We have considered all of petitioners' contentions and

---

[13]As discussed above, respondent conceded prior to trial the
section 6662(a) determination.  Consequently, petitioners should
not have incurred any litigation costs with respect to that
determination after that concession.

Assuming arguendo that the record had established that
petitioners incurred litigation costs with respect to the $8 WSB
interest determination and the section 6662(a) determination to
the extent that determination imposed an accuracy-related penalty
on the portion of the 2002 underpayment attributable to that
determination, on the record before us, we find that petitioners
have failed to carry their burden of establishing the respective
amounts of litigation costs incurred with respect to the $8 WSB
determination and the section 6662(a) determination to the extent
that determination imposed an accuracy-related penalty on the
portion of the 2002 underpayment attributable to that determina-
tion, the nature of any such costs, and the reasonableness of any
such costs.

[14]Since we have found that petitioners failed to carry their
burden of establishing that they incurred any litigation costs
with respect to the $8 WSB interest determination and the section
6662(a) determination to the extent that determination imposed an
accuracy-related penalty on the portion of the 2002 underpayment
that was attributable to that determination, we need not, and
shall not, address respondent's argument that petitioners unrea-
sonably protracted the proceeding, see sec. 7430(b)(3), and
therefore are not entitled to litigation costs under sec.
7430(a).

arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>An order denying petitioners'</u>

<u>motion will be issued</u>.